Good morning, your honors. May it please the court. My name is Tim Roscoe, and I'm an assistant United States attorney from the District of Montana. I work in our Missoula office. Good morning, Mr. Stevens. Your honors, I would like to reserve two minutes for rebuttal, if that's okay. You can start by telling us how that name is supposed to be pronounced. I believe it's Didier, your honor. Thank you. Your honors, in the government's view, this case boils down to the operative language of the particular clause of this insurance policy. That language is highlighted throughout all of the papers in this case, but in essence it states that we cover, we being Chubb Insurance in this case, cover the reasonable increase in your normal living expenses that is necessary to maintain your household's usual standard of living. And in essence that's the issue in this case, and more specifically, in fact, the issue in this case is reasonable increase and whether Miss Didier suffered or incurred a reasonable increase in her living expenses at all as a result of her otherwise. Let me just run, I think looking at the language of the statute, you have a pretty strong argument. Here's my question. The insurance company had already agreed that it would pay a certain amount for Miss Didier to move into. I think it was the bed and breakfast. That is correct. And she decided not to and instead to try to fool them into thinking that she had incurred the same amount of expenses. I think that's a fair reading of the record. How was the insurance company harmed? The insurance company was harmed in our view because as Mr. Peterson testified at trial, the claims adjuster, we only pay that money if you actually incur the expense. Okay. So here, run through this hypothetical with me. So she moves into where she moved, incurs no additional expenses and calls them up and says, I've decided to move into this place. And they say, well, then we won't pay you. And she says, okay, I'll move to the bed and breakfast where you've already agreed to pay me. Do they have to pay her? I think that they would. So what's their harm? I mean, I understand that she's committed a fraud here. At the far end of the fraud, you need some harm to the defrauded party. What's the harm? Well, the harm is that they end up forking out the $15,250 a month for eight months that they wouldn't have otherwise paid, assuming that she goes to the place that she goes. But they were perfectly willing to pay it if she were somewhere else. So I guess my question is, why does it matter to the insurance company where she is? Well, I think it matters because they want to cover something when coverage is triggered, and the coverage is triggered here by incurring the expense. I mean, they don't ‑‑ they're not a charity. And I'm with you. And let me just try this a little bit differently. I'm with you on the interpretation of the contract. She was not entitled to this amount of money under the contract because it requires an increase in her living expenses. But the insurance company had already said it was willing to pay $15,000 a month. I forget what the number is, to her if she had moved to a different place. And so at the end of the day, how were they harmed? They paid out exactly the same amount of money that they were willing to pay out, that they said they were willing to pay out in the first instance. That they were willing to pay out had the expense been incurred. Think of it as fraud. You have to have a false statement. She made a false statement. It has to be material. I think it was. And there has to be harm to the ‑‑ harm to the defrauded party. The defrauded party paid out exactly the same amount of money it would have paid out had they not been defrauded. So that's my question. Well, I think they paid out the amount of money that they would have paid out had the coverage been triggered, had she actually incurred the expense. So I think from our point of view what the essence of this case was is we would not have paid the money. We would not have given you that money. So the materiality of the statement, our willingness to part with that money, excuse me, is the fact that you're actually going to incur the expense. And if you're not, which is your choice, if you are, we will cover it. But if you're not, then we won't. And I think that was the step that the district court skipped was saying we know we have covered losses to the actual residents, and that means that every other sort of aspect of this policy kicks in. And it was our view that in order to trigger the coverage under this provision, the reasonable increase in living expenses provision, you actually have to incur the expense, and that's where the fraud took place. Can you talk about the conditional motion for new trial or the motion for new trial? Was there a conditional motion for new trial below? Not from the defendant Didier, no. From the co-defendant, Ms. Nasir, there was a motion for a new trial. Was that broad enough to cover both parties? I don't believe so. I mean, the trial was joint, but there were separate counsel and there were separate papers filed throughout with separate and unique arguments made as to each defendant. I think if Ms. Didier had thought that there was a legal basis for that motion, it should have been made. And your position is that Didier can't get a new trial, conditional new trial, in the absence of such a motion? That would be our position. And, frankly, even had the motion been made, the standard is pretty high. I mean, now the judge – Then we'd be reviewing the judge under a different standard. You're arguing as a matter of law that Didier is not entitled to a new trial, not having – That's correct. If the judge had granted it, we'd have a different record and we'd be reviewing under a different standard, wouldn't we? Correct, correct. And to the extent you have the record at all, the information that's contained in the district court's order indicates that the reasons underpinning the decision to grant a new trial for both defendants really hinge on the arguments that Ms. Nasir made, the co-defendant made, and really don't have any bearing on Ms. Didier's case at all. Unless Your Honors have additional questions for me at this time, I would just reserve the remainder of my time. Thank you very much. All right. May it please the Court. My name is Colin Stevens. I am the attorney for Ms. Didier, Mr. Roscoe. The issue in this case that was before this Court and that's before the district court is materiality. It is the provision of the insurance contract that Mr. Roscoe cited to you just now. So let me turn around the questions I asked your colleague. Let's assume the policy said if you break your leg, we will pay for hospital expenses, and your client decided not to go to the hospital with a broken leg. And hospital expenses would have been $20,000 to fix the leg. Everybody agrees on that. Your client instead goes home and says, I'll let it heal on its own and submits a phony hospital bill for the 20. Is that fraud? I'm assuming the same language in the insurance contract. Yes. Is that fraud? I would say it's fraud. Why is this any different? I mean, the difference in this case is that here, the insurance company, they set a budget. She initially, Ms. Didier, went out, found a place, and the insurance company and her client decided to go to the posh place that they were willing to put her. She lied about it and put the money in her pocket. They didn't want it. They weren't entitled. She wasn't entitled to put the money in her pocket. She was entitled to nice living quarters, if you will. Right. And so I guess, I mean, there's a bunch of differences, obviously, but the difference in this case is that here, the insurance company, they set a budget. She initially, Ms. Didier, went out, found a place, and the insurance company and its subcontractor said that's too expensive. These are your end zones. This is how much we are willing to pay you for rent. Well, my hypothetical, they said, look, you broke your leg. We've got a schedule here. You don't have to send the hospital. We'll pay up to $20,000 in hospital bills. So we've set a budget. And she says, ah, it'll set on its own. I'll just go home and keep the money. It strikes me as exactly the same case, isn't it? Well, I guess in this case, the tweak, Your Honor, would be if she went to a natural path, if she went to someone less expensive, right? That's what she did here. I mean, she incurred living expenses. Okay. They're cut off the negotiations. I mean, she could have gone back and forth, and she could have tried to strike a deal with them. Instead, she lied. And we're projecting as to what the insurance company might have done next. They might have said, well, it's all the same money to us. We'll just pay you. Or they might have said, no, that's really not what this policy is intended to pay. We're not going to do that. And instead of trying to strike a deal with her, she told them something that wasn't true. That wasn't true in two different respects, either as to the condition of the place she moved into or as to the ownership and who was going to get the money. The ownership as well. So why isn't that fraud? I agree that it's a lie. They're two big lies. I guess what I would – this case comes down to the testimony of Mr. Scott Peterson, the insurance adjuster. It starts at entry of record 275. I guess what I would direct the Court to, entry of record page 294 and entry of record page 315. And it – those – we're discussing the paragraph, and in 324, line 4. So that paragraph you just read was the provision that enables Ms. Didier to find somewhere to live and for Chubb to pay for it. That's right. That's the testimony of Mr. Peterson. Across examination, he and I were talking about what's reasonable. On entry of record 315, starting at line 4, he talks about what – that's a great question. What's reasonable? And it's based on what's commensurate. And that is the baseline. That's the – you've broke your leg. That's the $20,000. Chubb Insurance, it was the white glove policy. Mr. Peterson at one point testified, we try to be liberal. We work with people. And they were – his testimony is clear that, look, we have a – we're pretty generous. You find a place, if it's a little too expensive, we don't care, we'll take care of you. This is a white glove policy. But what I don't read him as saying is you can lie to us and stick the money in your own pocket. And that's the difficulty here, I think. I think whatever they would have done had she told the truth is, I think, quite different than what happens under this circumstance, isn't it? Well, but if you – if reasonable is based on commensurate, then it's not – But that's the amount they're willing to pay. What they're saying is if you find a place that's pretty expensive, we'll treat that as reasonable. We're not bad people. You bought an expensive policy. But this is meant to reimburse you for expenses actually incurred, not just put money in your pocket, isn't it? But I read the policy as being no different than if my car gets hailed on and my car insurance company pays me a check, here's my estimate, here's what the various body shops would charge me. Then you get to keep the check and not fix the car. And if I want to drive around in my dented pickup. Suppose you had done that after you had submitted a fake receipt from an auto body shop that you'd dummied up and turned into them. Not simply they pay out for this kind of accident and up to you after that what to do. You'd put in something that said, I paid $1,800 to fix that fender. Wouldn't that be fraud? Yes. Well, isn't that exactly what happened here? No, at that, what happened here was the end zones. Here's what we will pay you. Here is what your losses were. But that was in context with a very specific, after all, there was a first offer that was rejected. We'll put you in this place. She said, no, I don't want to be there. They found a second place and it was expensive. And they said, well, we'll pay for this one and we know what it costs. And she then lied to them about where she went. Well, but then there was an additional place that they said that's too expensive. That's not commensurate. Right. So that was one that they didn't. So put that one out of the equation for a second. They were willing to pay for the bed and breakfast, I take it. We know what it would have cost. She said, I have an alternative place I'm going to. Somebody else owns it. I'll pay them the same amount. And that was a lie. We all agree about that. So my question is, isn't the insurance company entitled to say, look, we were perfectly happy to pay you for any increase in your living expenses and we were happy to pay up to the amount we agreed on for the bed and breakfast. But what you don't get to do is phony up your living expenses and put the money in your pocket. This money was supposed to go to reimburse you for increased living expenses. Isn't that the most rational interpretation of this policy? Respectfully, Your Honor, I would disagree. I think the most rational interpretation of the policy, and based on Mr. Peterson's testimony, is that we pay you for what you've lost. You have this fancy yellow mansion on the hill next to the lake. That is what you've been deprived of. And we will compensate you commensurate with that loss. And I don't see anywhere in the policy itself that Ms. Didier had a duty to ---- Well, the policy doesn't say we will reimburse you commensurate with what you lost. It says, under extra living expenses, we cover the reasonable increase in your normal living expenses that is necessary to maintain your household's usual standard of living. Now, the district court thought that was ambiguous. What exactly is the ambiguity? Why doesn't that get read to mean you've actually got to spend the money? Well, Mr. Peterson interprets reasonable, again, at page 315. Let's assume we all agree that reasonable is the number that they agreed to pay for for the bed and breakfast. What Judge Clifton is asking you is, did she have an increase in her living expenses? No. She had an alteration in her living expenses. Right. She didn't have an increase in her living expenses in the amount that she claimed, correct? Correct. Why doesn't that ---- doesn't the policy only cover the increase in her living expenses? Increase. A reasonable increase commensurate to where she was. That's fine. It's still the increase. We all accept the fact that $10,000 to $15,000, that's the right price. What I'm saying is it looks to me like the policy requires the expense, actually incurring the expense, not deciding, well, I'm going to give up that luxury and I'm going to take the cash. I don't see how the policy gives the policyholder the option to choose that for herself. She could try to strike the deal, but she didn't. And she should. And she should. I absolutely agree with that. I mean, I guess the issue is if under that reading of the policy, if she had moved into the exact same situation. Right, they would have spent exactly the same amount of money, but it would have been for what they promised to do as opposed to something else. I'm sorry, Your Honor, I didn't catch the question. I know your time is fleeting here, so I do want to ask you another question. What's your position on the condition of a new trial? It doesn't look like your client moved for a new trial below. Doesn't that kill her? Doesn't that kill the condition of a new trial? And perhaps I was ineffective for not asking. I don't know whether you're effective or ineffective. I'm just trying to find out what the record reflects. No, it didn't. I didn't think it was. I don't think it's material then, and I don't think it would be material at a new trial. Thank you. Thank you for the argument, and I think you have some time left. Unless Your Honor has questions for me, I would just cede the remainder of my time. Thank you very much. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Smith, Hurwitz